UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JACKIE STALEY, | § | |
| TDCJ #01886483, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:17-CV-0326 |
| | § | |
| JUAN ORTEGA BARNETT, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Jackie Staley (TDCJ #01886483), proceeding *pro se* and *in forma pauperis*, is an inmate in the custody of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"), at the Jester III Unit. Plaintiff has filed this action under 42 U.S.C. § 1983, claiming that the defendants partially paralyzed him during a surgical procedure and then refused to communicate with him or treat him after conducting further tests (Dkt. 1 at 4, 11–15).

Defendants have filed a motion to dismiss (Dkt. 10) contending that Plaintiff fails to state a claim for which relief may be granted. Plaintiff has filed a response in opposition to the motion, requesting leave to amend his Complaint if it is not sufficient to state a claim (Dkt. 22). The Court has considered the motion, pleadings, response, and applicable law, and concludes that Defendants' motion to dismiss should be **conditionally granted** because Plaintiff fails to plead a viable claim for relief. The Court

**grants** Plaintiff's request for leave to amend his pleadings and **denies** his motions for appointment of counsel and a preliminary injunction.

## I.    BACKGROUND

Plaintiff alleges that, beginning May 13, 2014 through July 20, 2015, he went to John Sealy Hospital in Galveston because he was frequently falling down.  Dkt. 1 at 10. In August 2015, he suffered a serious fall on the Hutchins Unit in Dallas Texas and hurt his right shoulder (*Id*.).  The medical providers at that unit examined his shoulder and referred Plaintiff to an orthopedic doctor at John Sealy (*Id*.).  The orthopedic doctor x-rayed his shoulder and found no fractures, but because Plaintiff had pain in his neck and numbness in his hand, she ordered an MRI and CAT scan of his neck (*Id*.).  The MRI showed a narrowing of the cervical canal stenosis at the C4-C6 vertebrae (*Id*.).  The physicians at John Sealy, Dr. Juan Ortega Barnett ("Barnett"), Dr. Daniel Williams Branch ("Branch"), and Dr. Achal Parotam Patel ("Patel," and, collectively, "Defendants"), allegedly said that Plaintiff's spinal cord was swollen, which was causing his neck pain, headaches, and numbness, and that he needed emergency neck surgery (*Id*.).  Plaintiff alleges that the doctors warned him that if he kept falling down, he could damage his neck and be paralyzed (*Id*.).  He returned to the Hutchins Unit to discuss the surgery with his medical providers there, and they advised him to have the surgery (*Id*. at 11).

On October 13, 2015, Plaintiff had the emergency surgery on his neck (*Id*.).  He claims that the Defendants said he did not have anything to worry about and that they perform this surgery all of the time (*Id*.).  When Plaintiff woke up from the surgery, his

body was numb; he could not feel anything and could not move (*Id*.). The next day, Defendants started him on physical therapy (*Id*.). The physical therapist came to his room and moved his arms and legs, but Plaintiff could not feel anything (*Id*.). From October 14 to October 18, 2015, physical therapists showed him how to sit up in bed and how to balance himself and tried to help him walk (*Id*.). After the therapist saw that he could not walk, he taught him how to use a wheelchair (*Id*.). Plaintiff was discharged to the Beto Unit on a stretcher to assisted living (*Id*. at 12).

On or around October 21, 2015, doctors ran more tests and found that he had an infection and a large amount of fluid at the C4-C6 laminectomy site (*Id*.). The doctors noted that fusion of the C4-C6 vertebrae and collection of fluid resulted in severe spinal stenosis of the cervical spine, causing his paralysis (*Id*.). Between December 11 to December 15, 2015, Defendants performed more tests, including a lumbar puncture, and determined that Plaintiff has progressive lower extremity weakness and now is paraplegic (*Id*. at 13).

Between December 15 and 18, 2015, doctors prepared to do another lumbar puncture to shoot dye into his spinal cord, but before they started the procedure, an unidentified man allegedly came into the room and told them to stop (*Id*.). Plaintiff claims that this man told the doctors that the dye test could show that the surgery was the cause of the paralysis and that they were at fault, so they stopped the procedure (*Id*. at 13-14). Plaintiff was discharged from the hospital on December 22, 2015 (*Id*. at 14).

On February 11, 2016, Plaintiff was transferred to Jester III medical unit with a medical pass for a wheelchair (*Id*.). He asked Dr. Friedman, one of the medical providers

at Jester III, if he could return to John Sealy Hospital to receive more treatment so he could walk again, but Dr. Friedman examined his neck, reviewed his medical records, and said that it would not happen any time soon (*Id.*). Plaintiff attempted to return to John Sealy for further treatment, but the doctors there referred him to his providers at Jester III for medical attention (*Id.*). Dr. Friedman stated that he should not get any more surgeries (*Id.*).

Plaintiff filed a Step One grievance complaining that the doctors at John Sealy did not want to see him again (*Id.* at 15). On January 4, 2016, he was sent to John Sealy, but when he arrived the nurse said that he was there to see doctors for gastrointestinal issues, not for his neck issues (*Id.*). Plaintiff told the nurses that he wanted to keep trying to walk again (*Id.*). If not, he wanted a wheelchair with a cushioned seat and all the things that a paralyzed person needs including pain medication for his neck and head (*Id.*). When he returned to the Jester III Unit, Dr. Friedman saw him again and said that there was nothing Plaintiff could do (*Id.*).

On April 7, 2016, another offender pulled Plaintiff out of his wheelchair and broke Plaintiff's hip. Plaintiff stayed in administrative segregation for 15 days (*Id.*). Dr. Friedman sent Plaintiff to John Sealy Hospital, and Plaintiff received surgery for his broken hip, which involved three long rods through his hip and femur (*Id.*). Plaintiff reports that the doctors at John Sealy did a good job on his hip (*Id.* at 15-16).

On August 19, 2017, Plaintiff was transferred from Jester III medical unit to Holliday Unit, and he was not given a reason for the transfer (*Id.* at 16). Plaintiff claims that the medical staff at Jester III told him that the doctors at the John Sealy had him

reassigned to the Holliday Unit (*Id.*). Plaintiff alleges that the Holliday Unit does not have assistance for daily living, 24 hour medical staff on call for emergencies, or accessible housing (*Id.*). Plaintiff filed a Step One grievance about this problem, and TDCJ's response stated that it intends to comply with the ADA and referred him to Assistive Disability Services (ADS) (*Id.*). The day after his transfer, on August 20, 2017, Plaintiff was rushed to the emergency hospital (*Id.*). On September 1, 2017 he was in administrative segregation for medical reasons but did not have an accessible shower and had to bathe in a sink, which he claims was difficult to do because he is paralyzed (*Id.*).

Plaintiff alleges that from the first time he fell down until the day of the operation, Defendants knew there were changes in his spinal cord (*Id.* at 17). He alleges that they could have saved him from being paralyzed, but that they waited too long (*Id.*). He claims that Defendants should have given him medications to reduce the swelling before the operation and that he would not have agreed to the surgery if he knew his neck was swollen (*Id.*).

He alleges that since the surgery, he has broken his hip; his head and neck hurts every day; his ear rings all the time and it is hard to hear; he has lost some feeling in his mouth and it is hard to taste food; he has broken teeth because it is hard for him to know how hard he his chewing; and he gets electric shocks flying through his body and cannot control his muscle movements (*Id.*).

Plaintiff sues Defendants in connection with the emergency C4-C6 laminectomy surgery and the care he received or did not receive to address the complications that left him paralyzed. Defendants move to dismiss, contending that Plaintiff does not allege

facts that reflect conduct that rises to the level of a constitutional violation under the Eighth Amendment. Plaintiff has filed a motion for a preliminary injunction claiming that Defendants retaliated against him for filing this lawsuit (Dkt. 24 & 25), and requests leave to amend his complaint if it is insufficient to state a claim for which relief may be granted (Dkt. 22).

## II.     STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) may be granted if the pleading "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, courts generally must accept the factual allegations contained in the complaint as true. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). Federal pleading rules require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *see Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). The pleadings also must claim that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

"Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Where, as here, a plaintiff proceeds *pro se*, his pleadings must be "liberally construed," even if "inartfully pleaded," and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and

quotation marks omitted); *accord Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 601 & n.36 (5th Cir. 2017) (declining to strictly construe *pro se* litigant's pleadings in context of motion to dismiss).

## III.   <u>DISCUSSION</u>

### A.   **Motion to Dismiss**

Plaintiff alleges that Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment, which prohibits "cruel and unusual punishment."   U.S. CONST. amend. VIII.   "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal quotation marks and citation omitted).   To state a claim for deliberate indifference, a plaintiff must plead facts to show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."   *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Lawson v. Dallas County,* 286 F.3d 257, 262 (5th Cir. 2002); *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002).

"Deliberate indifference is an extremely high standard to meet" because a plaintiff must demonstrate that the defendants "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical need.'"   *Domino v. Tex. Dep't of Criminal*

*Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). A delay in medical care can rise to the level of a constitutional violation only if the delay is occasioned by deliberate indifference resulting in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

An inmate's dissatisfaction or disagreement with the medical treatment he received, or a claim that the treatment was negligent or the result of medical malpractice, does not in itself state a claim for deliberate indifference in violation of the Eighth Amendment. *See, e.g., Wilson v. Seiter,* 501 U.S. 294, 297 (1991) (assertions of inadvertent failure to provide medical care or negligent diagnosis are insufficient to state a claim); *Norton v. Dimazana,* 122 F.3d 286, 291-92 (5th Cir. 1997) (holding an inmate's dissatisfaction with the medical treatment he receives does not mean that he suffered deliberate indifference); *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991) (holding inmate's "disagreement with his medical treatment" was insufficient to show Eighth Amendment violation); *Fielder v. Bosshard,* 590 F.2d 105, 107 (5th Cir. 1979) (finding "[m]ere negligence, neglect, or medical malpractice is insufficient" to show Eighth Amendment violation); *Wagner v. Bay City,* 227 F.3d 316, 324 (5th Cir. 2000) ("the subjective intent to cause harm cannot be inferred from a . . . failure to act reasonably"). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985).

Plaintiff does not state facts to show that any of the Defendants acted with deliberate indifference to a serious medical need. Plaintiff alleges that after he suffered a

serious fall in August 2015, he saw medical personnel at his unit, who then referred him to Defendants at the John Sealy Hospital. Defendants determined that his swollen spinal cord was the cause of his neck pain and recommended emergency neck surgery. Plaintiff acknowledges that Defendants allowed him to consult with his medical providers at his unit and that he decided to have the surgery on October 13, 2015. Although Plaintiff woke up unable to feel or move his legs, Defendants started him on physical therapy the very next day. Plaintiff alleges that on October 21, 2015, the Defendants ran more tests and found that he had an infection at the laminectomy site. Between December 11 and 15, 2015, the Defendants ran more tests, including a lumbar puncture. Plaintiff reports that he was in the hospital until December 22, 2015, when they discharged him.

Although Plaintiff alleges that the Defendants did not perform a second lumbar puncture with dye and that they did not see him after he was discharged on December 22, 2015, Plaintiff was referred to his unit medical provider, Dr. Friedman, who advised him against getting any further surgeries and told him that there was nothing more that Plaintiff could do.

Taking all the facts pleaded in the Complaint as true, Plaintiff does not show that the Defendants were aware of facts from which an inference could be drawn that Plaintiff was at a substantial risk of serious harm, actually drew that inference, and still refused to treat him, ignored his complaints, intentionally treated him incorrectly, or exhibited a wanton disregard for his well-being. On the contrary, Plaintiff's pleadings recount several steps that Defendants took to treat Plaintiff, including surgery, physical therapy, and a battery of tests. Plaintiff reports that he had a history of falling prior to the surgery

and that Defendants thought that he risked paralysis with another fall if he did not have the surgery. Plaintiff alleges facts that show no more than negligence, which is insufficient to establish a claim for deliberate indifference. *See Wilson v. Seiter,* 501 U.S. at 297 (negligence is insufficient to state a claim); *Fielder,* 590 F.2d at 107 (negligence or medical malpractice is not a constitutional violation). There is no indication that any of the Defendants knew of, and disregarded, an excessive risk to Plaintiff's health; Plaintiff pleads no facts to show that they actually drew an inference that neck surgery or their subsequent actions would likely result in significant harm to him and disregarded that harm. Rather, Plaintiff recounts that he had a serious condition that Defendants were trying to remedy. Plaintiff's facts reflect that Defendants in their medical judgment recommended surgery, which Plaintiff decided to undergo.

Although Plaintiff understandably alleges a dissatisfaction or disagreement with his medical care, that is not sufficient to meet the "extremely high standard" of deliberate indifference to a serious medical need. *See Norton,* 122 F.3d at 291-92 (dissatisfaction or disagreement with medical care insufficient to state an Eighth Amendment claim); *Varnado,* 920 F.2d at 321 (same). Accordingly, Plaintiff's claims against the Defendants are subject to dismissal.

### B.     Motion for a Preliminary Injunction

Plaintiff moves for a preliminary injunction against the Defendants, alleging that they retaliated against him by blocking his telephone access, making him wait for long periods in the waiting room, and transferring him to the Holliday Unit.

To obtain a preliminary injunction, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest. *Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005). For a permanent injunction to issue, the plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. *Dresser–Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847–48 (5th Cir. 2004).

Injunctive relief in the form of "superintending federal injunctive decrees directing state officials" is an extraordinary remedy. *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985). Emphasizing its extraordinary character, the Fifth Circuit has cautioned that an injunction "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *PCI Transportation Inc. v. Fort Worth & Western Railroad Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (citations omitted).

### 1.    No Likelihood of Success on the Merits

Plaintiff has not "clearly carried the burden of persuasion" that he is likely to succeed on the merits of his claims that the Defendants are retaliating against him for filing this lawsuit. "To prevail on a claim of retaliation, a prisoner must establish: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir. 1998). "Causation requires a showing

that but for the retaliatory motive, the complained of incident . . . would not have occurred." *Id.* (internal quotation marks and citations omitted). A prisoner's personal belief that retaliation must have been the reason for the adverse action is insufficient to state a valid claim under 42 U.S.C. § 1983. *See Jones v. Greninger,* 188 F.3d 322, 325 (5th Cir. 1999).

Plaintiff does not establish that Defendants have violated a specific constitutional right, as discussed above, or that a retaliatory motive caused any adverse action. Plaintiff also does not establish that any of the Defendants had the authority to order any of the alleged retaliatory acts. In that regard, Plaintiff fails to show that the Defendants, who are doctors at John Sealy and not prison security classification officers, had any responsibility for his transfer to the Holliday Unit. Nor does Plaintiff establish that they had any power to interrupt his telephone service or cause a long wait at the hospital when his appointments were to see other doctors.

Plaintiff reports that his telephone access was reconnected on June 13, 2018, and, therefore, his claims for injunctive relief regarding his telephone access are moot (Dkt. 25). Public records also reflect that Plaintiff is currently confined at the Jester III Unit, not the Holliday Unit, and therefore his claims regarding the Holliday Unit are also moot. *See Herman v. Holliday*, 238 F.3d 660, 665 (5th Cir. 2001) (holding that the prisoner's claim for injunctive relief was moot because he had been transferred out of the unit).

In addition to mootness, Plaintiff does not show that retaliatory animus was the but-for cause of the complained-of harms or establish "a chronology of events from which retaliation may plausibly be inferred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th

Cir. 1995). Accordingly, Plaintiff does not meet his burden to show a likelihood of success on the merits of his claims and, therefore, does not satisfy the first requirement for preliminary injunctive relief.

### 2.    No Imminent Threat of Irreparable Harm

In addition, Plaintiff does not meet his burden to show that there is an imminent threat of irreparable harm if an injunction is not granted. As noted above, Plaintiff does not establish an ongoing constitutional violation that would cause him irreparable harm or that there is a substantial likelihood that any of the complained-of harms are likely to be repeated. Moreover, his pleadings and the record show that his claims for injunctive relief are moot, so there is <u>no</u> imminent threat of irreparable harm if an injunction does not issue. Therefore, he fails to establish the second requirement for an injunction.

### 3.    Balance of Harms and the Public Interest

Finally, Plaintiff does not show that any threatened harm to him outweighs the threatened harm to the parties he seeks to enjoin or that granting an injunction would not disserve the public interest. As noted above, an injunction against state officials is an extraordinary remedy, and Plaintiff has not shown that any of the Defendants are responsible for his transfer, temporary lack of telephone access, or waiting room issues. Because he has not established any ongoing harm, the harm to Defendants should an injunction issue outweighs any harm to Plaintiff. The Court further finds that Plaintiff's vague request of the extraordinary remedy of a general injunction against Defendants would disserve the public's interest. Thus, Plaintiff fails to meet his burden on the third and fourth requirements for a preliminary injunction, and his motion must be denied.

### C.    Motion for Appointment of Counsel

There is no automatic constitutional right to appointment of counsel in civil rights cases. *See Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir. 2007); *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982).  Where a litigant proceeds *in forma pauperis*, the court may "request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1); *see also Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 310 (1989) (holding that the statute governing *in forma pauperis* cases does not authorize "coercive appointments of counsel" for indigent litigants in civil cases).  Although a district court may appoint counsel if such would advance the proper administration of justice, it will ordinarily only do so in exceptional circumstances and where an indigent litigant has colorable claims that will not receive a meaningful hearing without counsel.  *See* 28 U.S.C. § 1915(d); *Naranjo v. Thompson*, 809 F.3d 793, 803 (5th Cir. 2015); *Ulmer*, 691 F.2d at 213.  When deciding whether to appoint counsel, the Court considers (1) the type and complexity of the case; (2) whether the indigent was capable of presenting his case adequately; (3) whether the indigent was in a position to investigate the case; and (4) whether the evidence would consist in large part of conflicting testimony so as to require skill in the presentation of evidence and cross examination.  *Ulmer*, 691 F.2d at 213.

Plaintiff has thus far shown himself capable of self-representation.  His pleadings are neatly prepared and he has filed appropriate motions for relief, including motions for extension of time and for appointment of counsel.  Liberally construed, his claim centers on an alleged failure or refusal of his medical providers to address his paralysis and treat

him after his back surgery in deliberate indifference to his serious medical needs in violation of the Eighth Amendment, which does not present a complex case or novel question of law. The Court finds that this is not an exceptional case involving complex legal issues that would justify the appointment of counsel.

## IV.   ORDER

Accordingly, the Court **ORDERS** as follows:

1.   Plaintiff's request for leave to amend (Dkt. 22) is **GRANTED**, and Defendants' Motion to Dismiss (Dkt. 10) is conditionally **GRANTED**. This case will be **DISMISSED** in **thirty (30) days** unless the Plaintiff submits an Amended Complaint, if he can do so in compliance with Federal Rule of Civil Procedure 11(b), that cures the deficiencies in his Complaint.

2.   Staley's motions for appointment of counsel (Dkt. 21) and for a preliminary injunction (Dkt. 24) are **DENIED.**

3.   Defendants' Motion to Strike (Dkt. 28) is **DENIED as MOOT**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 7th day of August, 2018.

George C. Hanks Jr.
United States District Judge